# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**

**VS.**                                              **CRIMINAL ACTION NO. 1:07CR176-P-D**

**PETER BERNEGGER,**                                             **DEFENDANT.**

## ORDER

This matter comes before the court upon Defendant Peter Bernegger's Motion for Judgment of Acquittal or, in the Alternative for a New Trial [149]. After due consideration of the motion and the response filed thereto, the court finds as follows, to-wit:

In the instant motion, the defendant renews his motion for acquittal which was denied during trial and moves for a new trial.

First, the defendant argues that the verdict was contrary to the overwhelming weight of evidence. After viewing the evidence presented during trial "in the light most favorable to the verdict, affording the government the benefit of all reasonable inferences and credibility choices," *U.S. v. Pruneda-Gonzalez*, 953 F.2d 190, 192 (5th Cir. 1992) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)), the court concludes that there was sufficient evidence presented for a reasonable jury to have reached the verdict rendered in this case.

Second, the defendant reasserts his objections to the Government's jury instructions given and objections to his jury instructions that were refused. As explained in its Rulings on Proposed Jury Instructions, the court once again overrules these objections. The Government jury instructions given were drawn virtually verbatim from the pre-approved Fifth Circuit Pattern Jury Instructions. As shown in the aforesaid Rulings, the court modified some of the Government's instructions to

make it clearer to the jury which counts applied to which defendant. See Jury Instruction G-1A, G-2A, and G-9A. With regard to the defendant's proposed instructions, all save one were refused because they were either inappropriately peremptory (D-PB-2 through D-PB-7), already covered by the Government's instructions or the Court instructions (D-PB-1, D-PB-8, D-PB-10, 11, 12, 13, 17 through 26), or contained argument which was inappropriate for the court to give and was reserved for defense counsel to argue during closing arguments (D-PB-9, 10, 11, 24 through 26).

Third, the defendant maintains that he suffered unfair prejudice because he was arraigned on Count 1 and offered evidence regarding Count 1 during trial. However, when Count 1 is read in its entirety, from paragraph 1 to 9, it is clear that it only applies to Stephen Finch since the operative language under the subtitle "Execution of Scheme" only mentions Stephen Finch's alleged wire fraud upon Larry Mobley through the auspices of Finch's company, FTE. Peter Bernegger was not alleged to have made statements to Larry Mobley. Furthermore, FTE was Stephen Finch's company, not Peter Bernegger's. Counts 2, 3, and 4, all of which involve Peter Bernegger, incorporate paragraphs 1 through 8 and the operative language of each fraud claim is contained in the paragraph following the incorporation of paragraphs 1 through 8. In other words, the first eight paragraphs of the Superceding Indictment describe the general alleged scheme between Defendants Bernegger and Finch, while the last paragraph under the subtitle of "Count One" only describes allegations involving Finch, while Counts 2, 3, 4 only pertain to Bernegger.

Fourth, the defendant argues that the court erred by failing to instruct the jury that Count 1 was inapplicable to Defendant Peter Bernegger. However, this is not the case. The court specifically modified all instructions to specify by name which defendant was accused for which counts. Jury Instruction G-2A, for example, which deals with Count 1's wire fraud allegation, specifically limits

consideration of Count 1 to "Defendant Stephen Finch." Furthermore, the court prepared two verdict forms for the jury: one naming only Peter Bernegger, and the other naming only Stephen Finch. The verdict form for Peter Bernegger listed only the Counts that were applicable to him; namely, Counts 2, 3, 4, 5, and 6. Count 1 was not an option. On Stephen Finch's verdict form, only Counts 1 and 5 were listed as options.

Fifth, the defendant argues for a new trial because the court erred by denying his motion for severance. As explained in its October 27, 2009 Order [127], the circumstances in this case, especially since a conspiracy between the two defendants was at issue, were far less than "extreme" as required in *U.S. v. Harrelson*, 754 F.2d 1152, 1175 (5th Cir. 1985) to warrant a severance. As explained above, the jury was specifically instructed as to which counts applied to which defendant. Furthermore, Jury Instruction D-F-3 stated:

> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately. The case of each defendants should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of the crimes charged should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

After combining D-F-3 with the other instructions and the verdict forms that specified by name which defendant was accused of which count, the jury was clearly and abundantly instructed to avoid improperly lumping the defendants together.

Sixth, the defendant argues that the court erred by not dismissing Count 3 given that the victim, Leo Benieck, was deceased and therefore the defendant could not "confront" him pursuant to the Sixth Amendment's Confrontation Clause. For the same reason, the defendant argues that the court should have excluded Leo Benieck' check which, it was undisputed, was sent to the

defendant's company and which the defendant cashed.

Pursuant to the U.S. Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine the witness regardless of whether the statement is deemed reliable by the court, abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980). However, the statement at issue in this matter, Leo Benieck's check written to the defendant's company, is not testimonial and therefore admission of the check does not offend the Confrontation Clause. In *Crawford*, the Supreme Court stated that the term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 448 U.S. at 68. In further regard to the definition of "testimonial," Justice Scalia further observed in *Crawford* that "testimony" was typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 448 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). The check, construed as an out-of-court statement, does not conform to either of these definitions of testimonial statements.

Though the check at issue was an out-of-court statement, it fell under the hearsay exception for business records pursuant to Federal Rule of Evidence 803(6). There was testimony from the defendant's office manager that all of the checks submitted as evidence from the subject investors were genuine and that, during the regular course of business, were received and cashed by defendant's business. Moreover, the defendant did not object or contend that the check itself from Mr. Benieck was inauthentic. In any event, reliance is not an element required to prove a violation of 18 U.S.C. § 1341, the mail fraud statute. *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 533 (5th Cir.

4

1992).

Seventh, the defendant argues that the court should have sustained his objection to introduction of the UCC-1 Financing Statement through Dr. Lester Spell, Mississippi's Commissioner of Agriculture because the Government did not produce the statement in discovery. There was no objection to the authenticity of the document. The Government counters that though it did not specifically send the defendant the document itself when it sent other documents that it intended to use at trial, the letter accompanying the provided documents stated that there were other documents in the Government's possession that might be used at trial and that they would be provided upon request. The Government avers that the defendant did not request to see the other documents. The Government also argues that though it asked Dr. Spell during direct examination about the UCC-1 Financing Statement (in fact, Dr. Spell had the document on the stand and volunteered it) the Government did not offer it into evidence until re-direct after "the defendant cross-examined the witness so vigorously about the fact that the document has not been offered into evidence, implying that the Financing Statement did not exist." Government's Response at 4. The Government argues, therefore, that the defendant has no grounds to object to admission of the document since he raised the issue during cross-examination.

Since (1) the defendant does not argue that he was unable to request all of the documents in the Government's possession, (2) the defendant does not object to the authenticity of the document, and (3) the defendant brought up the question of the existence of the document during a vigorous cross-examination, the court concludes that the Government had the right to rebut with admission of the document.

Finally, the defendant argues that the bank fraud charge in Count 6 should have been

dismissed because BancorpSouth did not suffer a financial loss or risk. The Government counters that it put on proof through Dwight Dyess that the bank did in fact suffer a loss as a result of the defendant's fraudulent actions. Since this issue goes to sufficiency of the evidence, after viewing the evidence "in the light most favorable to the verdict, affording the government the benefit of all reasonable inferences and credibility choices," as required by the Fifth Circuit in *U.S. v. Pruneda-Gonzales*, *supra*, the court concludes that the defendant's motion to dismiss Count 6 should be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant Peter Bernegger's Motion for Judgment of Acquittal or, in the Alternative for a New Trial [149] is **DENIED** in both respects.

**SO ORDERED** this the 15th day of December, A.D., 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE